Good morning. I'm pleased to report Kevin Marchese on behalf of my client, GM, the appellant, petitioner below, and the parents. I have the unique perspective of being both an attorney and a parent wading through the IDEA here, and we come before the Court here today on the three segments, three individual components, I should say. The first being on an issue involving statehood, which came before the appellate court on an interlocutory appeal a couple of years ago. The second major component concerns the underlying due process administrative court action. And the third component would be the Section 504 procedural violations that we allege constitute a violation of GM's. Roberts. Counsel, one threshold question. I take it GM is now in high school, and, therefore, are there some issues that are moot? I don't believe so. I believe that there was a recent case, and we briefed it, the name escapes me offhand, that came before the Court involving a matriculation issue involving a 21-year-old in the court. Ninth Circuit recently indicated that that does not moot out the issues, that the issues are still in play. I'll just be sure. I don't think you answered my question. Is this student now graduated and is now in high school? Is that correct? This student is in high school. All right. Okay. So with respect to your interlocutory appeal, that was about which of your issues? That was about the State's law. Statehood. And with respect to that, a panel of this Court said that issue is moot, given the graduation from the Joint Elementary School District. Right or wrong, Judges Noonan, Bea, and District Judge Walter, why isn't that law of this case? I'm sorry. Why isn't that the law of this case? In other words, your appeal wasn't they treated your appeal, they didn't say it's not a correct interlocutory appeal. They said this issue is moot, and therefore, we're dismissing this appeal. Given the fact that that panel already found this issue to be moot, why is it in front of us, properly in front of us? Because I think the Ninth Circuit has changed its opinion on that. I think the Ninth Circuit came down with an opinion that indicated that the matriculation issue does not necessarily moot a case out. Is this the case that you filed a supplemental citation? Yes, sir. Okay. I know the case. But I guess I'm still trying to figure out. I hate to go into this. Maybe I'll just withdraw my question. I hate to go into this, because it doesn't matter to me if we've had a thereafter opinion or we haven't. Our Court dismissed it as moot, and it's done. What can I do about it? Well, it was an interlocutory appeal. And at that point And that's why I don't like them. You've got all these interlocutory appeals come up. Our Court said what it had to say about it, and it went away. Well, but now that the district court action is over, the issue still remains because there were unfinished issues there, and it concerns you. Well, maybe there's actions for other types of issues. Well, it concerns the issue of the free and appropriate public education, the FAPE. Well, I understand, and there are issues all regarding FAPEs. But I'm still having a tough time. If that Court, our panel, has no authority over them, and you didn't appeal it, it went on, ruled what it did, how I can get back in as to the issue that it faced. Well, I think very simply because the Court did not consider the fact that there were the remaining issue of the nonpayment to the private provider. So that's the only thing in front of us? Well, as far as the State put concern issues are concerned, probably so. That's the main constituent issue of that. Let's skip backwards from that to the merits. Let me tell you what I'm having difficulty with here and see if you can help me. I don't see anything in your – I saw it in the district court, but I'm not sure I see it here in your opening brief that attacks the substantive FAPE, the substance of the FAPE. In other words, sometimes we see one that says, well, they gave my child this accommodation or that accommodation, and that wasn't enough. Are you – other than nonpayment, do you have any argument to us that the FAPE was in – that the FAPE that your child received was inappropriate? That's somewhat of a difficult question to answer because of the fact that – Put aside procedural issues. Right. But as I understand it, in the end, for the period of 6th, 7th, and 8th grade, your child received instruction outside the school from somebody that you all agreed was the appropriate person, and there's some dispute about P.E. Put that to one side for a second. I don't see – I saw in the – for the administrative law judge a fight about this, but he found that the FAPE was appropriate, met standards. And there may have been an argument in front of the district judge about this, but when I read the opening brief in this case, I don't see anything that says, oh, no, this was a terrible thing, something else should have been done, something additional should have been done, the wrong people were doing it, again, putting aside P.E. So am I right in thinking that we are not here today trying to decide whether the FAPE is substantively appropriate? You have a procedural argument that I want to get to. I believe that you may be correct. The reason is that the issue of the FAPE is that the free component is what the FAPE is, and that's what's missing here. And so to say that, well, are you satisfied with the FAPE sort of thing is a question  Sotomayor, let me cut you off for a second, because I'm trying to figure out what issues I have to decide and which ones I don't. Putting aside payment for a second, you're not quarreling with the nature of the education given or the – Yes, we are. Tell me where in your brief you're saying there's something wrong with the education given. Okay. Because he didn't receive math, math was part of the IEP. Wasn't the IEP, the original IEP, replaced by the – by the FAPE that came in? And didn't you say we're starting over, this is the plan in August, after the August 28th meeting? Put aside your procedural concerns about that meeting. Doesn't that displace? You have a plan that says this is what this teacher is going to do. Where's math included in that? In the – in the August 28th IEP, which we contend was unlawful. Right. Okay. There was an offer of FAPE made, and that offer of FAPE was taken to the administrative law court on an administrative due process by the school. But that offer of FAPE did not include math, did it? Offhand, Your Honor, I'm not positive whether it did or did not. Well, it says that she will do – that the teacher will do the following things, and this will – and there will be no other – your child won't attend school. So we may be – we may be confusing the IEP. The IEP of 2008 in which Gray said – Right. The original one in which you settled. Correct, yeah. Based on that settlement, GM saw a outside private specialist for his dyslexia. Right. Well, but you're – you're – The IEP in that individual education plan, there was a provision for math goals, which contemplated math. And then you had a settlement into – then you – not a settlement. Then you had – and I want to get back to your procedural arguments for a second. The August 28th meeting, you were offered an FAPE, correct? Well, not quite, Your Honor. I think that the August 28th meeting is a little bit problematic.  I want to get past that. You all must understand that GM's annual IEP came in May at the end of that year after he went and saw that specialist, and he made progress. We had an IEP meeting at the end of the year, as we normally do. It's an annual IEP meeting. And at that IEP meeting, Grayson was able to demonstrate independent ability to read, the rudiments of the – of an independent ability to read. At that meeting, we had requested the offer of FAPE based upon that IEP meeting that was there. Participated. May of 2009. Yes. And then – and then there's an August 5th meeting that you don't attend, and I understand your procedural objections to that meeting. Correct. Then there's an August 28th meeting, and you're all – 29. 29, sorry. And you're offered something at that meeting. What are you offered? Correct. Offhand, I can't recite the particular date. Are you offered math? I don't recall, Your Honor. Two periods of math in a small-group setting. But math is a fundamental issue for GM. And if you were offered the math, two hours of math in a small-group setting, what was your response? Did you accept it or not? Well, no, because there were – there were other consequences to accepting the math in that GM would be losing the specialized dyslexia education that he was getting that was so critical to him. That was the – that was sort of the Hobbesian choice here. The fact of the matter was, was that the school split – did the IEP in May. We asked for the offer of FAPE, and they said that the printer was not working, but they would – that it would be forthcoming. And it was – when it was not forthcoming, following an agreement between the district's counsel, who attended that IEP meeting, and our advocate of Area Board 3, they agreed that that offer of FAPE would be delivered on June 5th. When it was not delivered on June 5th, and there was no response from the district with regard to where's our offer of FAPE, we filed for due process. At the time that we filed for due process, GM was with the specialist doing that particular program. The district never provided a response as required under the IDEA. They held a parentless IEP on August 5th and said, here's your IEP, here's your offer of FAPE. We – we contested that. The State agreed with us. That was – that was a – an IEP that was done without parent participation. And as this panel knows, recently in the – in the Doug C. or Doug H. case, there was a major issue with regard to giving a parent a – an IEP that they didn't get a chance to participate in. And I'm – when I tried to ask you before, and let me try it again, let's assume that despite your best efforts, you don't persuade us that the August 29th meeting doesn't solve the procedural problems. And I must tell you, that's where I'm – that's where I'm inclined to be. The August 29th meeting occurs. What's wrong thereafter? The – the August 29th IEP is a contrived IEP. It was contrived because it was based on the same IEP that was developed in the parentless August 5th IEP. Roberts. Roberts. Well, but so your argument is that if they – if they made a procedural error in originally coming up with the IEP, that IEP is forever tainted and never may be used. Absolutely not. I'm a reasonable person, Your Honor. What bothered me was the fact that we had an IEP meeting, that an offer of FAPE was drafted, and then it was suddenly waylaid without any explanation as to what happened to it until we got to trial, and we learned based on the testimony of the special education head that they had there, that the superintendent had pulled that IEP offer of FAPE. And so it's not that the August 29th IEP, per se, was tainted because of some minor procedural issue here. They were playing games. What was wrong, substantively wrong, with the IEP that you were offered on August 29th? It failed to address Grayson's needs for dyslexia and continuation with the successful program that he had with the outside provider. But didn't you – but then didn't you continue with that program? We had been – the program was – has been in constant continuation since his sixth grade, since the settlement IEP. So if that's true, let's go back to Judge, the first question I think you were asked, which is that what do you want us to do? What is it – what is it now that your child isn't – you can't get injunctive relief. What is – your child is out of the district. What is it that – what relief are you seeking? It's a great question. And the answer to that is, is he needs – he's going to be starting junior college next year without the fundamentals of a math education. He will be starting junior college without the ability to have – to participate in science classes because he didn't have a math background. And – But what is the relief that this Court can give you at this point? Well, I believe that it's called educational – the particular phrase escapes me, but it's essentially the opportunity for Grayson to participate in math classes in the classes that he did not have the benefit of. Even though he – even though he has graduated out of the district? Correct. And what case – what case do you cite for the proposition? That would be – that would be the case in which we supplement – supplementary relief. Is that JM? Offhand, Your Honor, I can't tell you. The Doug C. case? Doug C.? No, I believe Doug C. was the – there were two that we briefed. So that's – if we rule in your favor, tell me – Compensatory education was the word that I looked for. Yeah, okay. But we rule in your favor. Tell me what the last paragraph of my opinion says, other than – other than all the bad things you want to say about the district. Tell me. And therefore, we order that what? We're looking for compensatory education for JM to make up for the – for the deficits that occurred during the period of time that – and would this occur at the school district, at the Dry Creek Elementary School? I don't think so. Where were these portions of it? The way that we did it before, there were a couple of creative ways to do this. And you mentioned P.E., for example. We couldn't fit a P.E. class into the – into the schedule that JM had at school. And so what they offered was martial art classes after school, because he was already enrolled in a martial arts – so they did that. So my suggestion would be that if there was going to be compensatory education, you know, it would be at the community college or it would be at whatever program is – is appropriate for a youngster to essentially make up for that math instruction that he did not receive. Now, procedurally, let me now go – let's go backwards in this case. You – you – both sides went to see an ALJ, and the ALJ found in favor of the – of the district. The district court found in favor of the district. How do I know – how can I find on this record that your child has been deprived of anything? Isn't – isn't the most we can do is send this back for a hearing in front of the district court or the ALJ? In other words, we can't – I can't conclude from this record that your child was deprived of certain things. I can only conclude from this record at most that there – there were problems in the way the IEP was put together or the FAPE was put together. We can't order that – I can't order math education without somebody having said to me your child was deprived of it inappropriately. Where in that record can I conclude that? Or do I have to send it back for a hearing to somebody? I'm not sure. I'm not sure I'm worried about the record, but the question is very essential to me. What authority do I have to do any more than send this back to the district court? And based on error now, it seems to me that I have no authority. The authority is that the panel has de novo – modified de novo review power here. Well, I can't – what – And the fact of the matter is that the IEP is – What case do you give me that says I can order a math education? I believe that last case that we briefed indicated that the problem they had there was they were – they were mooting the case because the child had turned 21. And the – and the Ninth said that, well, wait a minute. Just because he turns 21 does not mean that he's not entitled to compensatory education. But wasn't that – I'm trying to find the name of the case, and we're both unable to remember the name of it, which is what makes it hard for me. I apologize. But wasn't that – wasn't that child still in an education setting in the defendant's district? And the fact that the child turned 21, the Court said, didn't mean he was no longer – I don't believe that he was. I believe that that was – that was sort of the problem there, was that he had turned 21, and he was, you know, a legal adult. But I don't know if it was in that particular education district or not. I don't know that it matters, because the fact – the fact is that the IEP is the controlling document, and the district failed to provide him the services at the time. And of course, this takes a long time to get up here to, you know, present this. And just so that – just so that I'm clear, there was an IEP. There was a plan. You're contending that that plan didn't have the correct things in it, right? No, Your Honor. You're not contending there was – there was ever a plan? I'm contending that the – what we were in was we were in statehood until we were able to effect a true plan, not a plan that was contrived, not a plan that was developed out of a parentless IEP. What was – what was the last valid plan, in your view? That would have been the – In May? That would have been – well, no, because we never saw that. That was way later. Settlement? Settlement? Yes, Your Honor. Was the year before? In August of 2008? That's correct. That's the last valid IEP in your view? Correct. That's the statehood IEP. Thank you. I don't have any questions. Anything further, counsel? Would the Court prefer me to address the other points in the appeal as well? No, I don't think so, counsel. You've got 19 seconds left if you want to use them. Otherwise, your time has expired. Thank you. Thank you, counsel. We'll hear from the school district. May it please the Court, my name is Marcy Gutierrez, representing the Apelli-Dry Creek Joint Elementary School District. Your Honors, I believe that we have addressed the main points that we felt needed to be briefed in the papers before the Court, and I would like to see whether or not you have any questions for the district at this time. Well, I'd like you to help me out here and let me walk through the events as I see them. First of all, you concede that the August 5th parentless meeting was not procedurally correct. I do believe that the administrative law judge in the underlying hearing found that the August 5th meeting was not procedurally correct. And you're not contesting that in front of the school? No, we're not contesting that point. However, I do believe that there are three cases, Ninth Circuit decisions, which indicate that the procedural defects related to that IEP do not result in a denial of fate for having that IEP meet with that parent. So I want to sort of move through the events here because I want to understand what happened. There was a settlement in 2008. That's correct, Your Honor, the October 2008 settlement. Okay. And your opponent says there was a valid IEP put together at that time. So and that's the August, not October. Correct, Your Honor. August. There was an August IEP that was attached as an exhibit to the October 2008 settlement agreement. Okay. And now we move along to 2009, and whatever the procedural deficiencies that occur, we get to August of 2009. What does that August meeting, August 29 meeting result in? What comes out of that meeting? The meeting that took place on August 28, 2009. I thought it was the 28th. I thought it was the 29th. Judge Smith said the 29th. So maybe it was at midnight. Maybe I have it wrong. Maybe it was at midnight on the 28th. But whatever it was, what happened? At that IEP meeting, parents did participate in that IEP meeting, as well as the other required IEP team members. They did discuss Grayson's areas of need. They discussed the goals. And let me cut you short for a second. Let's assume that all the appropriate discussion was had. What resulted from that meeting? What resulted in that meeting was an offer of free, appropriate public education with very specific educational services that I'm happy to share with you. No, no, we've got the record. An offer of FAPE was made. Tell me what happens with the IEP. What happened with the IEP was the IEP was provided to parents. The IEP that took place on August 28 cured any procedural defect of the parentless IEP meeting that happened on August 5. So you offered, in effect, the district came to that meeting and said, after a discussion, although, again, put aside, because I understand your opponent attacks the way you got there, we have a FAPE and we have an IEP. And they sue, correct? The lawsuit that was filed by the appellant was filed, actually, in June 2009. The district cross-filed it. They sued beforehand, and then you counter-sued. And so all these issues floated up in front of the ALJ, who found what? The ALJ found that, substantively, the offer that was put together over a series of three IEP meetings, May 28, August 5, and August 28, that, substantively, the offer resulted in an educational program that complied with the FAPE requirements. The ALJ also found that the IEP meetings that took place over these series of three meetings procedurally was appropriate because the ALJ found that any procedural deficiencies that occurred as a result of the parentless August 5 meeting were cured as a result of the actions that took place at the August 28 meeting. So what does the ALJ order at the end of the hearing? What does the ALJ say? The ALJ essentially established that the ALJ found that there was substantively and procedurally a valid IEP, and that the district had the right to assess Grayson. That is correct, Your Honor. The ALJ found that there was substantively and procedurally a valid IEP, and that the district had the right to assess Grayson. Okay. Counsel, what about this math issue? You've heard counsel discuss the failure to include math. Is that an accurate statement? No, Your Honor, that is not an accurate statement. Math was included in the IEP that is the IEP that's at review by this Court, and that IEP is the one that was developed over three meetings, May 28th, where the parents were present, August 5th, and August 28th. Well, that's why the math issue As Justice Scanlon pointed out, the IEP offer does not include two periods per day of small-group math instruction that was specifically offered to Grayson. His parents rejected that offer. I want to ask, again, how do we get to the Is there a document that says now no math? No, there's absolutely no document that says no math. There is an IEP document developed over these three meetings that offers math in the frequency and duration that Justice Smith, I'm sorry, pointed out. You made me better by saying no Scanlon. I apologize. And I took it with great apathy, but there was nothing left. They rejected, and GM enrolled in the 6th grade PE class after training with Ms. Cucci, right? No alternatives in the 7th grade, offered in 8th grade, rejected. Correct, Your Honor, I want to make sure the only time period that math was not provided to Grayson was during his, and was not offered to Grayson, was during his 6th grade year. That was the 2008-2009 school year. That was the year we were all complying with the settlement agreement. Right. The settlement agreement was an agreement that said the district will not provide math instruction. The district will only provide reading instruction in PE. And so I guess what I was asking in sort of an awkward way is because some parts of the you in effect stayed put, and so you continued to do what had been done before, correct? That is correct, Your Honor. Since the moment the settlement agreement was reached, the district implemented the three hours per day reading instruction and the PE instruction. And that was an agreement that was reached only regarding 6th grade year. But when this legal dispute arose in regard to the 7th grade year, and this litigation  settlement agreement. Now, with respect to the stay put order, part of this lawsuit attacks the stay put order. What do we do with the dismissal of it on the interlocutory appeal? Does that end our discussion of it? Your Honor, I do believe that this Court has already decided the matter of stay put. You've ruled that the issue is moot because of the law of the case. That is the controlling decision in this case. And the proper venue for the appellant to attack that issue would have been to seek review by this Court, and he did not do that. Let's go back again to the dispute about payment, and I see that, being fair to your side, you were late sometimes paying. What parts of that dispute are in front of us? Your Honor, I do not believe that the issue regarding payment to the independent service provider is before this Court. The reason for that is because of the stay put ruling. The record clearly shows the district paid for all services of its independent provider through the completion of Grayson's seventh grade school year. From the moment the district court issued a ruling on stay put, the district offered to implement the stay put ruling consistent with the district court's decision, and when this Court ruled that the matter of stay put was moot, that mooted any claims to reimbursement under the principles of stay put. Well, isn't it so that the parents had to pay for this? And then the district finally, after great consternation by the parents, came forward and gave them some money? Not exactly, Your Honor. There were some payment delays during the seventh grade school year, but I'm not sure if that exactly characterized the purpose of the payment delays or the reason behind the payment delays. That being said, the district court found that all payment was made through the end of the seventh grade school year, and any issues regarding disputes of payment regarding the eighth grade school year were addressed by the district court's ruling on the motion for stay put. The reason that that concerned me just a little bit is we get back here to whether sanctions were appropriate. And it seems to me that given what happened here, given that, yeah, the district did pay for everything, but pretty reluctantly, I didn't see them just go right out and pay. The parents had to keep it going, or we'd have an issue with that. The district didn't do anything. So then I get to the point where we do sanctions, and the ALJ orders sanctions against the parents. That's correct, Your Honor. Only for demanding the things they thought the district ought to do, and they were recalcitrant all the way. Your Honor, if I may correct one part of your comment there. The purpose of the sanctions that were ordered against the appellant were not in connection with payment to the service provider, or lack thereof. The purpose of the sanctions were in connection with the ALJ's finding that the appellant engaged in frivolous and bad faith tactics by repeatedly reasserting what the ALJ called a, quote, sudden death argument. The appellant continued to request a default judgment be entered against the district in connection with the district's late filing of a response. The OAH rejected that argument on four separate occasions, and that is the purpose for the sanctions. This all sounds good, but here I am sitting here, and I'm saying to myself, the district is recalcitrant about even paying for what they had to pay. The parents are fighting with them all the time, and the parents are trying to put together what they think ought to have happened, and they continue to file the motions. But the district doesn't help by being recalcitrant in their side of the issue. The parents have to pay for it to get it done. And then the ALJ comes forth and says, because you're filing all these motions, I'm going to charge you extra. It just doesn't seem like that this matches bad faith actions or tactics that are frivolous, which is the statute I have in front of me. Your Honor, first, there's no findings of fact in the record that the district was recalcitrant in its payments to the independent service provider. Now, just a minute. I called it recalcitrant because it sure seemed to me to be. I mean, here we go along. How many times did the parents have to pay for this to happen? And the district finally coughs up six months later. Your Honor, I'm not sure if there are any facts in the record regarding parents paying out-of-cost expenses during Grace in sixth grade or seventh grade school year. Excuse me. So what is eighth grade? Tell me what the eighth grade issue is. The eighth grade issue is the court says stay put. The district court says stay put. And so do you actually pay for it in eighth grade? No. What happened at that point, the district court said stay put. Stay put is three hours per day of reading intervention with any provider that you choose. You do not have to continue to use the independent provider selected by parents. But there's no issue about that eighth grade provider being paid. So there is no issue before the court about that independent provider being paid. But what the issue, the facts of the matter are that the district offered to implement that stay put order with a different provider. Parents did not want to use a different provider for that reading intervention. Right. And so they paid the provider that they had been using up until then. For the eighth grade year. And then that issue of stay put was before this court and you dismissed it as moot. But if it's a monetary issue, why is it moot? This Court found that the issue of stay put, because that was the question before the court, the issue of stay put and whether or not the district was legally obligated to fund these services under stay put, that issue was found moot when he matriculated to the ninth grade. So I know that procedural history. I guess what I'm having difficulty with is so you've never paid for this. The district did not pay for the services of the independent provider because the district was not required to. The district was required to abide by the ruling of the district court, which found that the district could implement stay put by using any educational service provider that the district chose within its discretion. Okay. So what you're saying is the district court said you don't have to pay for that person. You could use a different one. That's correct. And that was the subject of the interlocutory appeal. And that's been dismissed as moot. That's correct, Your Honor. Let's go back again to the procedural attacks on what happened here. You were late in making an offer, correct? No, Your Honor. The district was not late in making an offer. The district's required to have an IEP offer in place prior to the start of the school year. Okay. The school year started on August 10th. The district had an offer in place August 5th. Okay. So let's assume for a moment that as the ALJ found that that August 5th meeting was procedurally flawed, and therefore at the beginning of the school year you didn't have an IEP in place. Is there liability for the time period between August 10th and August 28th or 29th, whichever day it is, when you didn't have an IEP in place? No, Your Honor. The district, the ALJ carefully reviewing all the testimony before him did not find that there was any liability whatsoever resulting from that time period between August 5th and August 28th. Additionally, if we look at the case, the Ninth Circuit cases of A.M. v. Monrovia and the case of Ms. S. v. Vashon Island, as well as the Doug C. case itself, all three of these Ninth Circuit cases support the fact that the district is able to cure a defect in an IEP by having a subsequent IEP meeting. Well, and proceed, and as a matter of fact, what happened here was exactly what would have happened, I take it. We know what would have happened at the August 5th meeting since we know what happened at the August 28th meeting, which is to say the plan was rejected and the student remained in the educational plan that he had before, right? No, Your Honor. Prior to the IEP meetings that took place between May and August 28th, 2009, student had been out of the public school setting for an entire school year and had been participating in that one-on-one reading intervention for three hours per day. But the school team and parents that met at the starting of the May 28th meeting and that continued on August 28th, the team determined that it was appropriate for Grayson to return to a school setting. So I'm just asking what happened between the 10th and the 28th with GM? Between the 10th and the 28th, GM continued to participate in the services required as a result of the settlement agreement, and the district continued to pay for those services through the end of that school year. Okay. So what happened was between the 10th and the 28th, the services provided for by the settlement agreement were provided. That's correct, Your Honor. Not the services, not all the services that you thought ought to be in the IEP. That's correct, Your Honor. Between those dates, additionally, as a result of the services that were provided to Grayson between August 10th and August 28th, the services that parent requested, there was no educational deprivation to Grayson as he continued to participate in the services that parent wanted. So what services? Funded by the district. What services did GM miss between the 10th and the 28th? He missed two hours per day of one-on-one language arts intervention provided by district staff. He missed two periods per day of small group math instruction. Well, but those were later rejected. All of these were rejected. I want to find in terms of the services that were eventually accepted, what was the difference between the 10th, the 28th period, and the post-28th period? Parents never accepted any of the services offered by district. So that I guess I was asking you confused me with your answer. If what had happened on the 28th happened on the 5th, what would have happened was you would have continued under the settlement agreement, right? I don't believe so, Your Honor. If what happened on the 20th, well, possibly, because parents may have rejected the offer from on the 5th. That's right. Assuming they rejected the offer on the 5th that they rejected on the 28th and assuming it was the same. Then nothing would have changed. Nothing would have changed. That's okay. I'm sorry. I may have confused you with my question. And that's exactly what happened, right? And that is exactly what happened. And that's exactly what happened for the remainder of that 7th grade school year and his 8th grade school year. So that while as a matter of, I suppose I could think of deprivations that might include, had they accepted the offer on the 28th, you might have had some making up to do. Because you would have had a couple of weeks where the student wasn't given things that you thought were appropriate and there was a procedural problem with the meeting on the 5th. But because they were rejected, nothing really changed at all. I believe that is correct, Your Honor. I agree with your statement. That's what I was going to say. I'm sorry. I may have confused you with my question. Sometimes I get confused. I apologize. What is in front of us, then, in your view? What is in front of you, Your Honor, is to look at the findings of fact and law by the administrative law judge in the OAH proceeding and to review that record and providing it with substantial deference. Section 504 issue in front of us? Yes, Your Honor. There are Section 504 issues that are in front of you. I believe that there are five claims relating to Section 504 that are before you. The district court ruled on the record that the appellant did not establish a violation of Section 504 on any of his five claims. Those are in front of us. But as to the faith, you're suggesting that we're reviewing the ALJ's record and we're reviewing his findings of fact and law and give adequate deference. What deference is that? Your Honor, we are – I believe that the law requires that you provide substantial deference to the ALJ's decision, and that's the result of your decision in the Capistrano case. But is the – and I asked your opponent this question. Is the substantive composition of the faith in front of us? Yes, Your Honor. The ALJ – I understand what the ALJ did, but there was a – we had a district judge. We have an appeal. And I don't see anything in the other side's appeal that says there's something wrong with the faith. That was strenuously litigated below. But is that in front of us? Your Honor, the district court also did make findings. No, I'm saying the district court found that the faith was appropriate. My question is, is that in front of us? I don't – do you see your opponent as protesting the substantive components of the faith in this appeal? Well, I do not believe that the appellant made very many arguments in that regard. I do believe that that issue is before you, because there's a question of whether or not the district court's finding upholding the offer of faith is appropriate. I do believe that is before you. Oh, question? Go ahead. No. My worry was that it seemed to me that all they were contesting in their complaint, if you will, was not the findings of the faith, but that there was no default judgment. And that those are procedural. They left the procedural attack rather than the findings of the faith itself, based on what I read in the brief. We would accept that. All right. Thank you, counsel. Your time has expired. Thank you. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Smith, Hurwitz